UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACIE L. GRANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:16-cv-696-SEB-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security, Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Stacie L. Grant is not disabled.

## Introduction

On June 5, 2012, Stacie L. Grant filed an application for supplemental security income (SSI), alleging her disability began March 22, 2009.[2] Her claim was

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

[2]  Ms. Grant previously filed applications in March 2009 for disability insurance benefits and SSI. *See* Dkt. 12-3 at p. 41. Those claims were denied initially and upon reconsideration; following a hearing, an administrative decision finding Ms. Grant not disabled was issued on March 22, 2011. *See* Dkt. 12-3 at p.

denied initially and upon reconsideration.  Following a hearing on October 1, 2014, Administrative Law Judge Belinda J. Brown issued an unfavorable decision on October 31, 2014, and the Appeals Council denied Ms. Grant's request for review of this decision.  Ms. Grant now seeks judicial review of the Commissioner's decision.  *See* 42 U.S.C. § 1383(c)(3).  The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Grant's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to do "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.905(a).  Ms. Grant is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 20 C.F.R. § 416.905(a).

---

41. The Appeals Council then denied her request for review, and there is no evidence that Ms. Grant appealed that decision.  Thus, the doctrine of res judicata applies as to that previous denial decision.  In the denial decision currently at issue, the ALJ writes that "although [SSI] is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d)."  Dkt. 12-2 at p.16.

The Social Security Administration ("SSA") has prescribed a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 416.920. The first step inquires as to whether the claimant is currently engaged in substantial gainful activity; if so, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity ("RFC") is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 416.920(e). At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled. In order to support a finding that an individual is not disabled at this step, the Social Security Administration must demonstrate that other work exists in significant numbers in the national economy that the claimant can do, given her residual functional capacity and vocational factors. 20 C.F.R. § 416.960(c).

## Standard of Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

## The ALJ's Sequential Findings

Ms. Grant was 41 years old when she applied for SSI. She has a GED and completed some college courses. She has not worked since 2007, when she was employed for a time as a cashier at Wal-Mart, a job she left after being charged with receiving stolen goods. Dkt. 12-2 at p. 39.

At step one, the ALJ found that Ms. Grant had not engaged in substantial gainful activity since June 5, 2012, the application date. At step two, she identified the following severe impairments: anxiety disorder, affective disorder, and

substance abuse disorder.[3] At step three, the ALJ found that none of these severe impairments, singly or in combination, met or medically equaled a listing.

The ALJ next determined that Ms. Grant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except with the limitations that she could:

- occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds;

- stand and walk six hours (each) of an eight-hour workday;

- occasionally climb ramps and stairs but never ladders, ropes, or scaffolds;

- occasionally kneel, crouch, and crawl, but never balance;

- never work around unprotected heights or moving mechanical parts;

- not operate a motor vehicle;

- not work around unprotected bodies of water or open flames;

- perform only simple, repetitive tasks, with demonstrations for changes in procedure required; and

- not have contact with the public and could have only occasional contact with co-workers.

Dkt. 12-2 at p. 21-22.

With this RFC and based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Ms. Grant is unable to perform any past relevant work.

---

[3] The ALJ further found that Ms. Grant has several non-severe impairments, which cause no greater than minimal functional limitations. These non-severe impairments included the following: cervical and lumbar degenerative disease, seizure/pseudo-seizure disorder, bilateral knee pain, history of vulvar cancer, and carpal tunnel syndrome. Dkt. 12-2 at p. 19.

5

The ALJ found at step five, however, that—considering Ms. Grant's age, education, work experience, and RFC—she is able to perform other jobs existing in significant numbers in the national economy, including hand packager, laundry worker, and dishwasher.  Dkt. 12-2 at p. 26.

## Analysis

Ms. Grant argues generally that "substantial evidence fails to support" the ALJ's determination that Ms. Grant was not disabled based, apparently, on three more specific contentions.  First, she argues that the ALJ ignored evidence of her mental health impairments and range of GAF scores.  Second, she argues that the ALJ erred by not giving controlling weight to the opinions of her treating physician.  Third, she maintains that the ALJ's failure to summon a medical advisor—a psychologist, specifically—to testify as to whether Ms. Grant's mental health impairments medically equaled any listing constitutes reversible error.  In addition, Ms. Grant asserts that the RFC and the hypothetical question the ALJ posed to the vocational expert failed to account for all of her impairments.  The court considers these arguments in turn below.

**I.     The ALJ appropriately weighed the evidence of Ms. Grant's mental impairments.**

**A. The ALJ did not ignore evidence of Ms. Grant's functioning relevant to Listings 12.04 and 12.06.**

The ALJ determined that Ms. Grant's mental impairments were not disabling under the paragraph B criteria of 12.04 (depression) and 12.06 (anxiety). In order to make findings as to the paragraph B criteria of Listings 12.04 and 12.06,

the ALJ considered whether Ms. Grant's mental impairments resulted in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* Dkt. 12-2 at p. 20. With regard to activities of daily living, the ALJ found that Ms. Grant had mild restriction, noting that the "evidence demonstrates claimant's capacity to carry out high-level daily activities irrespective of her psychological impairment." Dkt. 12-2 at p. 20. As examples of these activities, the ALJ noted that Ms. Grant prepares meals, performs household chores such as laundry, dishes, dusting, and making her bed, walks or uses public transportation (although "pain" sometimes prevents her from doing so), and does crafting as a hobby (depending on whether she has the money to do so). Dkt. 12-2 at p. 20. As support, the ALJ cites the Function Report completed by Ms. Grant in September 2012 (Ex. B3E, or Dkt. 12-6 at p. 16-26) and the 3rd Party Function Report (Ex. B4E, or Dkt. 12-6 at p. 27-33), also from September 2012, completed by Jay McClure, described as Ms. Grant's boyfriend in the Additional Contacts Questionnaire at the end of her Function Report.

    The ALJ found that Ms. Grant has moderate difficulties in social functioning, noting that although Ms. Grant expressed some difficulty in handling stress and changes in routine, she reportedly gets along well with authority figures, has never been terminated for adverse social interaction in the workplace, and treating

7

therapists describe Ms. Grant as pleasant and cooperative. Dkt. 12-2 at p. 20 (*citing* Ex. B27F at p. 2, 6, or Dkt. 12-11 at p. 7).

With regard to concentration, persistence or pace, the ALJ found that Ms. Grant had mild difficulties, citing the results of mental status testing conducted in May 2013, in which the examiner found that Ms. Grant was fully oriented with no evidence of a thought disorder, had "adequate" judgment and insight, and had the ability to perform 5 of 7 mathematical equations successfully. *See* Dkt. 12-9 at p. 40. During this psychological evaluation, Ms. Grant exhibited poor memory and concentration at times, but at the conclusion of the evaluation, the examiner assigned a global assessment of functioning (GAF) score of 52, which is consistent with moderate psychological symptoms.[4] *See* Dkt. 12-9 at p. 42. The ALJ noted that she gave "partial weight" to this assessment, because subsequent evidence documents Ms. Grant's improvement. Dkt. 12-2 at p. 21. Specifically, in October 2013 and April 2014, treating clinicians assigned an improved GAF score of 58 and noted no evidence of attention, concentration, or memory deficits. Dkt. 12-2 at p. 21 (*referring to* Dkt. 12-11 at p. 32, 36, 39).

---

[4] Ms. Grant refers to "GAFs of 25, 43, and 50" in the heading and first paragraph of this section but does not present any argument whatsoever with regard to this point. *See* Dkt. 17 at p. 8. Then, in her reply to the Commissioner's memorandum, Ms. Grant complains that 20 C.F.R. § 416.912(d), required the ALJ to consider her "complete medical history," but this court has no reason to find that she failed to do so. Though she in the more distant past had had lower GAF scores, Ms. Grant acknowledges scores of at least 50 since 2012. *See* Dkt. 17 at p. 2-3.

8

In sum, the court finds that the ALJ appropriately considered the evidence—including Ms. Grant's GAF scores—and did not ignore lines of evidence or mischaracterize the evidence, as Ms. Grant has conclusorily asserted.

### B. The ALJ did not fail to give the opinions of an evaluating physician appropriate weight.

Again in conclusory fashion, Ms. Grant faults the ALJ for "arbitrarily reject[ing] the evaluations of Dr. Thomas MD." Dkt. 17 at p.8. As a threshold matter, the court does not know what to make of this argument because Ms. Grant's briefing has not identified any particular opinion of Dr. Thomas—who had evaluated her in 2011 and apparently saw her in 2014—that the ALJ allegedly failed to consider, nor has she explained how that opinion would have led to a different determination.

In deciding the weight to be given to any medical opinion, the ALJ is to consider numerous factors, including the length, nature and extent of the treatment relationship, supportability, and consistency with the record as a whole. 20 C.F.R. § 416.927(c). The ALJ assigned "considerable weight" to the state agency medical consultants' assessments with regard to functional limitations, because their opinions that Ms. Grant had no exertional functional limitations were based upon objective evidence of record (*i.e.*, diagnostic studies, clinical reports, and treatment narratives). *See* Dkt. 12-2 at p. 24. The ALJ also explained why she gave "little weight" to the medical source statement provided by Dr. Thomas, including that his exertional restrictions are not supported by the objective evidence of record, which documents no history of ambulatory or motor deficits; his assessment contradicts

9

his own clinical records, which note Ms. Grant's normal clinical presentation; his opinion regarding Ms. Grant's inability to pay attention to or adhere to a prescribed psychiatric treatment regimen is incongruent with progress reports and psychological evaluations dated 2010 to 2014; and his opinion is inconsistent with subjective and third-party reports noting Ms. Grant's high-level daily activities.[5] *See* Dkt. 12-2 at p. 24-25.  Thus, the ALJ gave good reasons—in accordance with 20 C.F.R. § 416.927(c)—for assigning more weight to the state agency medical consultants' assessments than to Dr. Thomas's reports.

### C.     The ALJ was not required to summon a psychologist.

Next, Ms. Grant contends that the ALJ's failure to summon a psychologist to determine whether her combined psychiatric impairments medically equaled Listing 12.04 or Listing 12.06 compels reversal of the denial decision.  According to SSR 96-6p, the ALJ is responsible for deciding the ultimate legal question whether a listing is met or equaled; however, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the ALJ be received into the record as expert

---

[5]     Incidentally, Dr. Thomas's notes from Ms. Grant's office visit on August 20, 2014, include the following in his "Treatment Plan":

> Stacie reported telephonically that her controlled substance was stolen shortly after her last visit.  Today she began to cry when told she could not have any controlled substances.  She denied calling and stated it may have been her ex-husband. . . .  Again it was restated that she will no longer be prescribed any controlled substances from this office.

Dkt. 12-9 at p. 118 (R. p. 675).

10

opinion evidence and given appropriate weight. The signature of a State agency medical or psychological consultant on a Disability Determination and Transmittal (DDT) Form ensures that consideration by a physician or psychologist designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. SSR 96-6p.

Here, the ALJ took note of two separate Disability Determination Transmittal reports signed by State agency medical consultants who explicitly concluded that Ms. Grant did not meet or equal the criteria for Listings 12.04 or 12.06. *See* Dkt. 12-3 at p. 44, 54. Thus, the ALJ's review of these reports ensured that consideration by a physician, or "medical advisor" was given to the question of medical equivalence. *See* SSR 96-6p; Dkt. 17 at p. 11.[6]

And again, Ms. Grant has not identified any specific evidence that the ALJ or the state agency medical consultants allegedly failed to consider or evidence that would support her arguments that her impairments satisfied a listing. The court finds no error in the ALJ's step three analysis.

## II. Substantial evidence supports the ALJ's step five determination.

Finally, Ms. Grant argues that the ALJ's hypothetical question to the vocational expert (VE) did not accurately describe Ms. Grant's impairments. In particular, Ms. Grant contends that the hypothetical question failed to account for her "moderate limitations in concentration, persistence, or pace," and that the RFC

---

[6] Although the ALJ gave little weight to these medical consultants' opinions that Ms. Grant's mental impairments were not severe, there is no inherent inconsistency in finding that impairments are severe but do not satisfy a listing.

11

assessment also omitted her impaired concentration, persistence, or pace, as well as her anxiety with panic attacks and her depression with frequent crying spells, all of which, Ms. Grant continues, "would obviously preclude all employment." Dkt. 17 at p. 13.

As an initial matter, the ALJ in fact determined that Ms. Grant has "mild"—not moderate—difficulties with regard to concentration, persistence or pace. *See* Dkt. 12-2 at p. 20. Moreover, the ALJ did take into account Ms. Grant's psychological disorders in her RFC by imposing a restriction for simple, repetitive tasks and by requiring demonstration of procedural changes. The ALJ also included social restrictions—no contact with the public and only occasional contact with co-workers—in view of Ms. Grant's reports of self-isolation and high anxiety. *See* Dkt. 12-2 at p. 22.

As to Ms. Grant's argument that her psychological disorders would obviously preclude all employment, the court observes that the ALJ clearly acknowledged Ms. Grant's subjective complaints, noting that Ms. Grant testified at the hearing that she has mood swings and panic attacks. "With regard to mood swings, the claimant stated that she is happy one moment and crying the next." Dkt. 12-2 at p. 23. The ALJ also noted Ms. Grant's testimony regarding her depression, explaining, "[Ms. Grant] testified that depression causes her to have little motivation to attend to personal hygiene, grooming, or household chores. . . . She indicated that she spends her days in bed." Dkt. 12-2 at p. 23. The ALJ also pointed out, however, that Ms. Grant's testimony regarding significantly limited

daily activities "is inconsistent with prior subjective and third party reports noting that she prepares daily meals, performs household chores, uses public transportation for errands/appointments, and shops." Dkt. 12-2 at p. 24.  The ALJ further noted that "the record contains no statements from treating therapists documenting considerable limitations in activities of daily living." Dkt. 12-2 at p. 24.  As a final matter, the court observes that Ms. Grant has pointed to no specific evidence that the ALJ allegedly failed to consider.  The court finds that substantial evidence supports the ALJ's step five determination.  *See Dixon*, 270 F.3d at 1176.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Grant is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated:  June 29, 2017

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system